[Cite as *State v. Power*, 2013-Ohio-4254.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.   12 CO 14 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| PAUL POWER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:           Criminal Appeal from Common Pleas
                                    Court, Case No. 10CR15.


JUDGMENT:                           Affirmed.


APPEARANCES:
For Plaintiff-Appellee:             Attorney Robert Herron
                                    Prosecuting Attorney
                                    Attorney Timothy McNicol
                                    Assistant Prosecuting Attorney
                                    105 South Market Street
                                    Lisbon, Ohio  44432


For Defendant-Appellant:            Attorney Dominic Frank
                                    1717 Lisbon Street
                                    East Liverpool, Ohio  43920


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                                    Dated:  September 23, 2013

VUKOVICH, J.

{¶1} Defendant-appellant Paul Power appeals the decision of the Columbiana County Common Pleas Court sentencing him to consecutive four year sentences on two counts of gross sexual imposition. Appellant argues that the judge showed bias and impartiality at sentencing and should have disqualified himself. He also contends that the court erred in imposing consecutive sentences by failing to fulfill its judicial fact-finding duties under R.C. 2929.14(C). For the following reasons, the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

{¶2} On January 29, 2010, appellant was indicted for raping his granddaughter by performing oral sex on her in 2009 when she was four or five years old. This was a felony-life offense. *See* R.C. 2907.02(A)(1)(b) (sexual conduct with child under 13), (B) (rape of child under 10). Appellant was also indicted for gross sexual imposition for having sexual contact with this child by touching her vaginal area in March or April of 2009, just before her fifth birthday.

{¶3} On January 17, 2012, appellant entered a plea to two counts of gross sexual imposition after the state reduced the rape count to its lesser included offense. Both offenses were third degree felonies with sentencing options ranging from 12 to 60 months. *See* R.C. 2929.14(A)(3). A presentence investigation report was ordered.

{¶4} At the March 9, 2012 sentencing hearing, the state recommended consecutive three-year sentences. In seeking consecutive sentences, the prosecutor asked the court to consider the nature of the offenses and the special harm caused to the victim. The prosecutor referenced the relationship, trust, and position of authority appellant held over his granddaughter. (Sent. Tr. 4-5). The defense asked for a lesser sentence or community control, stating that appellant previously led a law-abiding and productive life. (Sent. Tr. 5-6).

{¶5} The victim's mother, who is appellant's daughter, read a prepared statement. She related that the last two years of her daughter's life have been a nightmare as she no longer feels safe out of her mother's arms, explaining that the

child also experienced emotional abuse due to these acts committed against her and now suffers socially and academically as well. She expressed regret that she had always told her daughter that appellant was the one man who would never hurt her and would protect her at all costs, and she voiced incomprehension as to how her father, who had always protected her, could do this to her daughter, characterizing him as a monster and a stranger. (Sent. Tr. 8-9). She expressed disagreement with the plea to the lesser included offense and voiced that he should get life with parole no earlier than after twenty years. (Sent. Tr. 10).

{¶6} The court then criticized the victim's mother, which discussion is quoted under assignment of error number one. (Sent. Tr. 11-12). (The court's criticism was derived from the fact that the victim's mother did not report the abuse when the victim's grandmother told her that she caught appellant spreading the child's labia in the bathtub.)

{¶7} Appellant then spoke, stating that he accepted full responsibility for the charges in the interest of sparing his granddaughter from the continued trauma of having to testify in court. The court inquired if he committed the acts, and appellant answered that he was accepting responsibility. The court noted that it had read appellant's statement, and appellant responded that he did what it said in his statement. (Sent. Tr. 13). (His statement only said that he touched her one time in a joking manner while she was urinating in the bathtub). Appellant then apologized to the victim and his family. (Sent. Tr. 13-14).

{¶8} The court sentenced appellant to consecutive four-year sentences on each count and ordered him to register as a tier II sexual offender for a period of 25 years. The court expressed that its job was to protect the public, punish offenders, and decree a fair sentence under the purposes and principles of the felony sentencing law. (Sent. Tr. 14-15). The court then opined that what appellant did was despicable and beyond understanding. (Sent. Tr. 15). The court voiced that it was imposing consecutive sentences because the harm was so great and so unusual that a single term would be insufficient. (Sent. Tr. 16).

{¶9} The March 13, 2012 sentencing entry explained that consecutive sentences were imposed because a single term would be insufficient to punish the

offender and protect the public, consecutive terms were appropriate due to the great harm to the victim, and anything less than consecutive terms would fail to reflect the seriousness of appellant's conduct.  Appellant filed a timely notice of appeal.

ASSIGNMENT OF ERROR NUMBER ONE

{¶10} Appellant sets forth two assignments of error, the first of which alleges:

{¶11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY THE JUDGE NOT DISQUALIFYING HIMSELF DUE TO BIAS OR IMPARTIALITY AFFECTING THE SENTENCING OF THE APPELLANT AND THEREBY DENIED THE APPELLANT OF HIS RIGHT TO AN IMPARTIAL SENTENCING AS WELL AS HIS RIGHT TO DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS."

{¶12} Appellant urges that the court was biased in sentencing him to consecutive four-year sentences instead of the consecutive three-year sentences recommended by the state.  He provides two examples from the sentencing hearing, which he believes demonstrate bias:  the court's criticism of the victim's mother and the court's criticism of appellant.  Appellant quotes the following exchange, occurring after the victim's mother read her statement:

> COURT:  And you admit you let your daughter down?  Didn't you say that?
>
> [MOTHER]:  I do not admit I let my daughter down.
>
> COURT: You think you protected her?  How did this situation - - how was it allowed to occur?
>
> [MOTHER]:  Why are you attacking me, sir?  I am not the one that did anything wrong.
>
> COURT:  I'm not attacking you.  I'm just asking you.
>
> [MOTHER]:  I just remember my child and what he did.

COURT: Well, ma'am, at first you lied about this. You tried to cover it up yourself. And the first - -

[MOTHER] Because I didn't want to go through this and I didn't want to put my child through this.

COURT: So you tried to protect your father at first.

[MOTHER]: No, I did not. I tried to protect my daughter. And nobody has protected her. Through this whole thing he has been able to walk free and be around other grandchildren.

COURT: Ma'am, what he did was wrong. It makes him a felon. But you are not a model mother, and far from it.

[MOTHER]: Yes, I am. Yes, I am. I am a good mother. And you don't know me. You don't live with me. You don't know how I am with my daughter. And don't judge me.

COURT: Ma'am, I'm very well acquainted with the facts of this case and you're a poor excuse for a mother. I've heard enough from you. Sit down.

(Sent. Tr. 11-12).

{¶13} The second example appellant provides of the judge's alleged bias and impartiality is the court's pronouncement: "What you did here is despicable. It's beyond understanding." (Tr. 15). Appellant concludes that the "verbal attack" on the victim's mother and the derogatory comments about him demonstrates that the judge was not acting fair and impartially at sentencing.

{¶14} Appellant relies on a Supreme Court decision on an affidavit of disqualification and an older Tenth Appellate District case applying that disqualification decision to a direct appeal. *See Columbus v. Pierce*, 77 Ohio App.3d 841, 603 N.E.2d 1104 (1991) (reversing resentencing decision on grounds that judge should have disqualified himself upon the defendant's request due to statements he

made in denying bond pending appeal of the original sentence), applying *In re Disqualification of Ruehlman*, 74 Ohio St.3d 1229, 657 N.E.2d 1339 (1991).

**{¶15}** In *Ruehlman*, the trial court made the following "unsolicited remark" to the defendant at sentencing: "[I]f the parole board calls *me I am going to tell them that you should serve the full three and one-half years." Ruehlman*, 74 Ohio St.3d at 1229. The defendant filed a Motion to Suspend Further Execution of Sentence in the sentencing court and then an affidavit of disqualification in the Ohio Supreme Court, alleging that the comment made by the judge at sentencing shows bias and prejudice and a prejudgment of the merits of the pending motion. *Id.*

**{¶16}** The Chief Justice of the Ohio Supreme Court agreed, concluding that the remark suggested "the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind" and that a reasonable person could question whether the decision on the pending motion would be governed by the law and the facts. *Id.* at 1229-1230, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956). The Chief Justice then ordered that the original judge participate no further in the case to avoid "even the appearance of any bias or prejudice and to ensure the absolute confidence of the parties and the public in the fair and impartial resolution of all matters * * *." *Id.* at 1230.

**{¶17}** That case is distinguishable. As the state points out, appellant did not raise the issue of bias at sentencing. Nor did appellant raise the matter in a motion prior to the entry of the sentencing order. Notably, the court here did not file its sentencing entry until four days after the sentencing hearing, meaning there was time during which an affidavit of disqualification could have been filed. Finally, there is no motion pending before the trial court currently.

**{¶18}** Furthermore, *Ruehlman* is inapplicable as it deals with the Supreme Court's Chief Justice ruling on an affidavit of disqualification. An appellate court has no authority to render a decision with regard to disqualification or to void a trial court's judgment on the basis of personal bias or prejudice on the part of a trial judge as those matters are left exclusively in the jurisdiction of the Chief Justice or his designee. *Beer v. Griffith*, 54 Ohio St.2d 440, 441-42, 377 N.E.2d 775 (1978);

Section 5(C), Article IV of the Ohio Constitution; R.C. 2701.03. *See also State v. Melhado*, 10th Dist. No. 05AP-272, 2006-Ohio-641, ¶ 11.

**{¶19}** In *Beer*, the Ohio Supreme Court reversed an appellate court's decision that the trial judge had a conflict of interest. Notably, the dissent opined that the appellate court was permitted to address the issue because one instance of bias did not become known to the plaintiff's attorney until oral argument (when the appellate judges mentioned that the defendant's counsel was the trial judge's nephew). *Beer*, 54 Ohio St.2d at 442 (Locher, J., dissenting). However, the majority of the Supreme Court held that the appellate court had no authority to make disqualification rulings and to void judgments on that basis. *Id.* at 441–442.

**{¶20}** As we pointed out in *Payne*, an affidavit of disqualification is to be filed in the Supreme Court seven days before the next scheduled hearing, but if the reason for the affidavit is unknown until after that deadline, then the affidavit is not considered untimely if filed at the earliest possible moment after the reason has been disclosed to the affiant. *State v. Payne*, 149 Ohio App.3d 368, 2002-Ohio-5180, 777 N.E.2d 333, ¶ 6 (7th Dist.). Thus, had appellant filed an affidavit after the sentencing hearing and before the entry of judgment, the trial court would have been unable to act until a decision was made by the Chief Justice of the Supreme Court. *Id.* at ¶ 7, citing *State ex rel. Stern v. Mascio*, 81 Ohio St.3d 297, 299-300, 691 N.E.2d 253 (1998).

**{¶21}** We have stated that there is an exception to our lack of jurisdiction over allegations of a biased judge where the appellate court is reviewing whether a judge's behavior prejudiced or biased jurors. *State v. Drummond*, 7th Dist. No. 05MA197, 2006-Ohio-7078, ¶ 81, citing *State v. Wade* (1978), 53 Ohio St.2d 182, 188; *Scibelli v. Pannunzio*, 7th Dist. No. 05MA170, 2006-Ohio-5652, ¶ 26. Here, no jury was involved, and the allegation deals with statements made at sentencing after a guilty plea.

**{¶22}** Still, it has also been added that biased comments at sentencing can be reviewed for due process violations. Although, this is typically reserved for extreme cases or those involving a constitutionally protected status. *See, e.g., State v. Arnett*,

88 Ohio St.3d 208, 218, 724 N.E.2d 793 (2000) (addressing a comment alleged to involve religion).

**{¶23}** Bias or prejudice means a hostile feeling or spirit of ill-will or undue favoritism toward one of the parties or their attorney where there is the formation of a fixed anticipatory judgment on the part of the judge, as opposed to an open state of mind which will be governed by the law and the facts of the case. *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 1262, 657 N.E.2d 1361 (1994). The law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and the appearance of bias or prejudice must be compelling in order to overcome this presumption. *Id.* at 1263.

**{¶24}** As to the trial court's statements to the victim's mother, these were unsympathetic to the mother of the victim or represent a misunderstanding of her statements regarding how she felt she let her daughter down because she told her that her grandfather would always protect her. However, allegations of uncalled for criticism of *the victim's* mother for her failure to report, do not show bias against appellant. *See State v. Clay*, 8th Dist. No. 89763, 1008-Ohio-1415, ¶ 22-23 (sentencing court's criticism of *defendant's* mother was not reversible). This is especially true where the person being criticized was present to speak against, rather than in support of, the defendant. *Compare id.*

**{¶25}** As to the court's comment that what appellant did was "beyond understanding," does not demonstrate bias. Acts of gross sexual imposition against one's four year granddaughter are, in fact, beyond understanding. And, the court did not say appellant was despicable. Rather, the court stated that what appellant did was despicable. These comments of a sentencing court after reading the presentence investigation report in a case involving a grandfather's sexual actions towards his granddaughter when she was four and five years old do not come near the level of a due process violation or otherwise constitute reversible sentencing error.

**{¶26}** That is, opinions formed by the judge on the basis of facts in the record do not constitute a basis for a bias or partiality motion unless they display a deep-seated antagonism that would make fair judgment impossible. *State v. Dean*, 127

Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 49. Hence, critical, disapproving, or even hostile statements ordinarily do not support a bias or partiality challenge. *Id.*

{¶27} It is not reversible error for a sentencing judge, in explaining his sentence, to make critical statements about a defendant's conduct based upon the facts of the case presented to the court. *See, e.g., State v. Cemino*, 2d Dist. No. 24442, 2011-Ohio-5690, ¶ 8, 18-20 (scolding defendant and characterizing what he did as nasty, despicable, disgusting, and awful was not indicative of bias); *State v. Coomer*, 12th Dist. Nos. CA2009-09-016, CA2009-09-017, 2010-Ohio-3474, ¶ 18 (trial court's statement that the defendant was a psychopath may have been ill-advised, but it was not reversible).

{¶28} Moreover, a judge is encouraged to place a rationale for a sentence on the record, and we cannot reverse every time a judge happens to label the behavior at issue with an adjective that offends a child molester. As noted infra, the characterization of appellant's acts with adjectives are often part of the court's findings as to why consecutive sentences are imposed.

{¶29} In further dispelling any impression of bias, the state notes that a court is not bound by the state's recommendation. *State v. Kelly*, 7th Dist. No. 08-CO-17, 2009-Ohio-1035, ¶ 29. The fact that the trial court sentenced the defendant to consecutive four-year sentences instead of the recommended consecutive three-year sentences does not assist appellant in demonstrating bias merely because the court opined that having sexual contact with one's four or five year old granddaughter is despicable and beyond understanding.

{¶30} As the state points out, the sentencing court could have rejected the agreement regarding the dismissal of the rape charge. Instead, the court accepted appellant's plea to a lesser included offense of gross sexual imposition, lowering the available maximum sentence on the charge from life to five years.

{¶31} In addition, the sentencing court did not impose the maximum sentence on either count. As the court imposed four-year sentences instead of the available five-year sentences, allegations of bias are even further diminished. Lastly, no fine was imposed even though appellant had been a high earner for years (until his job was discontinued in December of 2010, a year after the indictment in this case).

**{¶32}** For all of these reasons, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶33}** Appellant's second assignment of error contends:

**{¶34}** "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY IMPOSING CONSECUTIVE PRISON TERMS FOR GROSS SEXUAL IMPOSITION CONVICTION SAME BEING CONTRARY TO LAW AND TO ORC §2929.14(C)(4)."

**{¶35}** Appellant argues that the trial court erred in failing to make the proper findings in imposing consecutive sentences and failed to provide reasons in support of those findings.

**{¶36}** Under the new legislation, effective September 20, 2011, a court imposing consecutive sentencing must make certain findings. 2011 H.B. 86. This legislation was enacted in response to the Supreme Court's statement that its *Foster* decision was incorrect in striking down statutory consecutive sentence provisions and that the legislature would need to enact a new statute to revive any requirement of findings for consecutive sentences. *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶ 3 of syllabus.

**{¶37}** Now, the court can impose sentences consecutively only if the court finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) two of the offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of these offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. R.C. 2929.14(C)(4)(b).

**{¶38}** Thus, the court is once again required to make findings. But, contrary to one of appellant's arguments here, reasons are no longer required to support the findings. *State v. Galindo-Barjas*, 7th Dist. No. 12MA37, 2013-Ohio-431, ¶ 16-17, 19; *State v. Wilson*, 2d Dist. No. 24978, 2012-Ohio-4756, ¶ 18 (court need not specifically identify the factual bases for its findings); *State v. Frasca*, 11th Dist. No.

2011-T-0108, 2012-Ohio-3746, ¶ 57 (reasons were required by former R.C. 2929.19(B)(2), which was not reenacted).

{¶39} Appellant argues that reciting the "magic words" in the statute is insufficient, citing *State v. Bradley*, 5th Dist. No. 2012CA11, 2012-Ohio-4787. However, that case held that the mere statement by the trial court, "the statutory conditions for consecutive sentences have been met," is not judicial fact-finding. This does not mean that a recitation of the statutory factors would have been insufficient.

{¶40} To the contrary, the reference to "magic words" is typically to explain that the sentencing court should, but need not, use the exact statutory language to make the findings required by statute. *See State v. Verity,* 7th Dist. No. 12MA139, 2012-Ohio-1158, ¶ 28-29. *See also State v. Thompson*, 7th Dist. No. 05JE16, 2005-Ohio-6792, ¶ 58. That is, the trial court is not required to recite any "magic" or talismanic" words when imposing consecutive sentences, as long as it is "clear from the record that the trial court engaged in the appropriate analysis." S*tate v. McKenzie*, 3d Dist. No. 15-12-07, 2012-Ohio-6117, ¶ 10; *State v. Nowlin*, 5th Dist. No. CT2012-0015, 2012-Ohio-4923, ¶ 70; *State v. Davis,* 8th Dist. Nos. 97689, 97691, 97692, 2012-Ohio-3951, ¶ 8.

{¶41} Accordingly, the record can either contain magic words or words which reflect that a finding was actually made. *See id.* Our final task is thus to determine if the record reflects that the three consecutive sentence findings were made the sentencing court.

{¶42} At the sentencing hearing, the court stated that its job was to protect the public, to punish offenders, and to decree a fair sentence. (Sent. Tr. 14). The court explained that this was accomplished by following the purposes and principles of the Ohio Felony Sentencing Law. (Sent. Tr. 14-15). The court noted that what appellant did was despicable and beyond understanding. (Sent Tr. 15). The court then announced its sentence, concluding: "The Court imposes today consecutive sentences because the harm here was so great and so unusual that a single term would be insufficient to accommodate the purposes and principles of the Ohio Felony Sentencing Law." (Sent. Tr. 16).

**{¶43}** The sentencing entry states that the court considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. The entry then provides: "The Court imposes consecutive terms because a single term would be insufficient to punish the offender and protect the public. Further the Court finds consecutive terms to be appropriate here due to the great harm to the victim. Anything less than consecutive terms would fail to reflect the seriousness of the Defendant's conduct." Considering all of these statements together, we conclude that the court made sufficient findings for imposing consecutive sentences.

**{¶44}** Correlating to the first finding, the court found that non-consecutive terms would be insufficient to punish the offender and protect the public. This is sufficient to satisfy the finding that consecutive service "is necessary to protect the public from future crime or to punish the offender." That is, if concurrent is insufficient, then consecutive would be necessary. Rote recitation is preferred to avoid these linguistic arguments on appeal, but it is not required of a trial court; synonymous words and phrasing can fulfill a court's obligation with regards to sentencing findings. *See Thompson*, 7th Dist. No. 05JE16 at ¶ 58 (upholding consecutive sentence but noting that trial court should more closely mirror statute in future to avoid misconstruction of its decisions by appellants), *citing State v. McCarthy*, 7th Dist. No. 01BA33, 2002-Ohio-5185, ¶ 12.

**{¶45}** The second statutory finding is that consecutive sentences are not disproportionate to the seriousness of the conduct and the danger to the public. The court characterized appellant's conduct as despicable and beyond understanding, stated that concurrent service was insufficient to protect the public and that concurrent service would fail to reflect the seriousness of the defendant's conduct. If concurrent service would not reflect the seriousness of the defendant's conduct, then consecutive service would not be disproportionate to the conduct. This is conceptually equivalent phraseology. *See State v. Lenigar*, 10th Dist. No. 03AP-53, 2003-Ohio-5493, ¶ 15 (if court does not use exact language, it should use "conceptually equivalent phraseology"). *See also Thompson*, 7th Dist. No. 05JE16 at ¶ 57-58 (also noting that the court's stopping its sentence after stating "consecutive

sentences * * * are not disproportionate" {without stating what they are not disproportionate to} was sufficient because talismanic words are not required). The absence of the word disproportionate is not per se reversible.

**{¶46}** As to the third statutory finding, the court explained that the purposes and principles of sentencing involved seriousness and recidivism factors. The court's entry declared that consecutive terms were imposed "due to the great harm to the victim" and that "[a]nything less than consecutive terms would fail to reflect the seriousness of the Defendant's conduct." Furthermore, at the sentencing hearing, the trial court explained that it was imposing consecutive sentences "because the harm here was so great and so unusual that a single term would be insufficient to accommodate the purposes and principles of the Ohio Felony Sentencing Law." (Sent. Tr. 16). This is sufficient to satisfy the court's duty to make a finding under the third prong in R.C. 2929.14(C)(4)(b).[1] This assignment of error is overruled.

**{¶47}** For all of the foregoing reasons, the imposition of consecutive sentences is upheld and the trial court's judgment affirmed.

Waite, J., concurs.
DeGenaro, P.J., concurs.

---

[1]In fact, appellant concludes by stating that "the court did nothing more than merely restate the statutory conditions." However, a sentencing court's restating of the statutory findings is in fact sufficient to fulfill its duty.