[Cite as *State v. Carter*, 2022-Ohio-3787.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

GREG EUGENE CARTER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 21 BE 0038

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 2020 CR 0214

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor and *Atty. Daniel P. Fry,* Assistant Prosecutor, 52160 National Road, St. Clairsville, Ohio 43950  for Plaintiff-Appellee and

*Atty. Brian A. Smith*, 123 South Miller Road, Suite 250, Fairlawn, Ohio 44333 for Defendant-Appellant.

Dated:
October 19, 2022

---

**Donofrio, P. J.**

{¶1} Defendant-Appellant, Greg Carter, appeals from a Belmont County Common Pleas Court judgment convicting him of five counts of rape, following a jury trial.

{¶2} L.W. (born in 2007) and S.W. (born in 2009) lived with their mother and appellant, who was their mother's boyfriend. In May of 2020, the two girls disclosed to their father's girlfriend, whom they refer to as their stepmother, that appellant had been sexually abusing them. S.W., who was ten at the time, stated that the abuse began when she was seven years old. L.W., who was 13 at the time, also stated that the abuse began when she was seven. Stepmother reported the girls' disclosure to the police.

{¶3} On October 9, 2020, a Belmont County Grand Jury indicted appellant on four counts of rape in violation of R.C. 2907.02(A)(1)(b)(B), with the specification that he compelled his victim to submit by force or threat of force, and one count of rape in violation of R.C .2907.02(A)(2)(B), all first-degree felonies. Appellant entered a not guilty plea.

{¶4} The matter proceeded to a jury trial on September 15, 2021. The jury heard testimony from the two victims and several other witnesses. It found appellant guilty as charged in the indictment. The court set the matter for a sentencing hearing.

{¶5} At the sentencing hearing, on the four R.C. 2907.02(A)(1)(b) counts of rape, the trial court sentenced appellant to 25 years to life on each count to be served consecutive to each other. On the single R.C. 2907.02(A)(2) count of rape, the court sentenced him to 11 to 16½ years to be served concurrent with his other sentences. Thus, the court sentenced appellant to an aggregate sentence of 100 years to life.

{¶6} Appellant filed a timely notice of appeal on October 5, 2021. He now raises nine assignments of error. We will address appellant's first and second assignments of error out of order for ease of discussion.

{¶7} Appellant's second assignment of error states:

APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶8} Appellant claims his convictions were not supported by sufficient evidence. Specifically, he claims plaintiff-appellee, the State of Ohio, failed to prove the dates on which the offenses occurred except for one of the counts, and that the state failed to prove

venue. He asserts the evidence regarding dates and venue was vague and inconclusive. He argues it did not establish that the offenses occurred at specific times in Belmont County.

{¶9} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Dickson*, 7th Dist. Columbiana No. 12 CO 50, 2013-Ohio-5293, ¶ 10 *citing State v. Thompkins*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *Id.* Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Id.*, citing *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

{¶10} A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbough*, 95 Ohio St.3d 516, 543, 2002-Ohio-2126, 747 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

{¶11} The jury convicted appellant of four counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Additionally, the jury convicted appellant of one count of rape in violation of R.C. 2907.02(A)(2), which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

**{¶12}** Venue is not a material element of the offense charged, but it is a fact that the state must prove in criminal prosecutions unless waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). R.C. 2901.12(A) provides: "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." Evidence that the crime was committed in the relevant county adequately establishes venue. *State v. El-Amin*, 6th Dist. Lucas No. L-05-1286, 2007-Ohio-3949, ¶ 16.

**{¶13}** Because specific dates and times are not elements of the offenses charged, indictments that charge sexual offenses against children do not need to specify the exact date of the alleged abuse if the state establishes that the offense was committed within the time frame alleged. *State v. Palmer*, 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-4639, ¶ 19. Additionally, there is no issue with the provision of a date range where the rape victim is a child, especially when the victim lives with the perpetrator. *State v. Miller*, 7th Dist. Mahoning No. 17 MA 0120, 2018-Ohio-3430, 118 N.E.3d 1094, ¶ 23.

**{¶14}** The indictment here alleged the offenses occurred between January 1, 2017 and May 16, 2020, in Belmont County.

**{¶15}** In this case, mother testified that she and the girls, along with appellant, moved to Indiana Street in Martins Ferry in Belmont County, Ohio in September or October 2016. (Tr. 262-263). L.W. was nine years old at the time and S.W. was seven. (Tr. 263). In June or July 2017, they moved to South 8th Street, also in Martins Ferry in Belmont County. (Tr. 264-265). In November 2019, the family began to stay at the Salvation Army in Bellaire, Ohio because their trailer in Martins Ferry had no heat. (Tr. 266-267). But they still stayed at the Martins Ferry trailer during this time too. (Tr. 267-268). In April of 2020, the family moved to Oil City RV, a camper site near the mall in Belmont County. (Tr. 269, 277). The girls lived in this camper during the time of mother's pregnancy with her third child, up until Mother's Day of 2020. (Tr. 270, 273).

**{¶16}** S.W. testified that appellant put his penis between her legs and in her mouth on multiple occasions while they were living in the house on Indiana Street. (Tr. 341-342). She testified that appellant also did this at the South 8th Street address and at

the camper. (Tr. 343). She stated that the last time appellant did this was the Friday before Mother's Day 2020, at the Oil City campground. (Tr. 349).

**{¶17}** L.W. testified that appellant put his penis inside her vagina while they were living on Indiana Street. (Tr. 374-375). She stated that appellant also did this to her while they were living on South 8th Street. (Tr. 375). And appellant did this to her while they were living at the camper. (Tr. 375).

**{¶18}** Taken as a whole, mother's testimony, S.W.'s testimony, and L.W.'s testimony establishes venue. The testimony as a whole also establishes the offenses were committed within the time frame alleged in the indictment. Mother's testimony established that from September/October 2016 through May 2020, the family, including appellant, lived at various residences, all in Belmont County, Ohio. S.W. and L.W. testified that appellant raped them at each of these residences. When their testimony is read together and when construing the evidence in the light most favorable to the prosecution, as we are required to do in a sufficiency of the evidence review, the evidence establishes that appellant raped both of the victims in Belmont County, Ohio during the time period alleged in the indictment. Thus, the jury's verdict is supported by sufficient evidence.

**{¶19}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶20}** Appellant's first assignment of error states:

APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶21}** Here appellant asserts his convictions were against the manifest weight of the evidence. He argues there was no physical evidence to support the convictions. He also asserts the victims' allegations were vague and did not establish when the offenses took place. Additionally, appellant takes issue with L.W.'s credibility. He claims she had greater knowledge of sexual terminology and sexual acts than the state's witnesses testified to. In support, he points to a copy of L.W.'s social media posts. The trial court did not allow this exhibit into evidence. He also points to evidence that L.W. may have had intercourse with a stepbrother and another person. (Tr. 290-292, 283-284, 386).

**{¶22}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d 380. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶23}** Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *Id.* citing *State v. Woullard*, 158 Ohio App.3d 31, 2001-Ohio-3395, 813 N.E.2d 964 (2d Dist.). If a conviction is against the manifest weight of the evidence, a new trial is to be ordered. *Thompkins* at 387. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 36 quoting Ohio Constitution, Article IV, Section 3(B)(3).

**{¶24}** In conducting a manifest weight of the evidence review, we must consider all of the evidence presented at trial.

**{¶25}** Leslie Doerfler is a sexual assault nurse examiner or SANE. She examined the victims on July 7, 2020. She testified that both victims were very uncomfortable talking about what happened with appellant. (Tr. 224-225).

**{¶26}** Regarding S.W., Doerfler testified that S.W. reported to her that appellant put his penis in her "private part" more than once. (Tr. 208). S.W. also reported that appellant put his penis in her mouth. (Tr. 208). S.W., who was ten years old at the time, told Doerfler the abuse started when she was seven. (Tr. 205-206). She also told Doerfler that she eventually told her stepmother about what was happening. (Tr. 209). Doerfler testified that because of the time that had passed since the last incident, she did not collect physical evidence from S.W. with a rape kit. (Tr. 210-211). Doerfler did conduct a physical examination of S.W. (Tr. 214). She did not find any physical signs of

Case No. 21 BE 0038

injury to S.W.'s genitalia but Doerfler testified that this did not mean that there had not been an earlier injury that had healed by the time she conducted her examination. (Tr. 214-215).

**{¶27}** Regarding L.W., Doerfler testified that L.W. reported to her that appellant had penetrated her vagina with his penis, his finger, and an unidentified object. (Tr. 226). L.W. reported this happened 40-50 times beginning when she was seven years old and continuing until she was 13. (Tr. 223, 226). She reported that appellant also sent her "creepy pictures." (Tr. 226). Doerfler also conducted a physical examination of L.W. and found it to be a normal exam. (Tr. 229).

**{¶28}** The victim's mother testified next. In addition to her testimony set out above regarding where the family lived, mother testified that stepmother told her that the children disclosed that appellant had been abusing them. (Tr. 275-276). She admitted that at first she had a "shadow of doubt" about what the girls said. (Tr. 282). But she no longer had any doubts about what they disclosed. (Tr. 282-283).

**{¶29}** Mother testified that on a few occasions she witnessed inappropriate conduct between appellant and L.W. One time she reprimanded appellant because L.W. was sitting on the couch with her legs draped over appellant. (Tr. 279). Another time she noticed appellant had his hand between L.W.'s legs while she was lying on the bed; however, his hand was not touching L.W. (Tr. 280).

**{¶30}** Stepmother testified that the girls were staying with her and father following mother giving birth to her third child. (Tr. 309). When it was approaching the time for appellant to pick them up, stepmother noticed S.W. was "flying off the handle," stomping around, and slamming doors for no apparent reason. (Tr. 310). She asked S.W. a few times what was wrong and at first S.W. would not tell her. (Tr. 310). Eventually, after a trip to the grocery store, S.W. told stepmother that appellant was sexually abusing her. (Tr. 310-311). S.W. told stepmother that appellant had also touched L.W. inappropriately. (Tr. 311). Stepmother then asked L.W. how many times appellant had touched her inappropriately. (Tr. 311). L.W. covered up her head and did not answer. (Tr. 312). Stepmother told father about what she had learned. (Tr. 316). They informed mother and she asked them to keep the girls with them. (Tr. 316-317). Stepmother stated that she later took the girls to report what had happened to the police. (Tr. 317).

{¶31}  In addition to her testimony set out above, S.W. testified that she did not tell her stepmother or father what was going on sooner because she did not know that what was happening was "exactly bad." (Tr. 338).  She stated that "it became a regular thing in my life." (Tr. 344).  S.W. testified that she told her stepmother after her baby brother was born because she did not want her little brother involved in these things. (Tr. 338-339).  S.W. testified that appellant would have her take her clothes off, he would take his clothes off, and he would put his penis into her.  (Tr. 341-342).  She stated that it hurt and she would try to close her legs or run to the bathroom.  (Tr. 342, 345).  S.W. stated this occurred when her mother was at work or at the store.  (Tr. 342).  During this time, appellant would be babysitting her.  (Tr. 342-343).

{¶32}   In addition to her testimony set out above, L.W. testified her stepmother told her what S.W. had disclosed and asked her if appellant had done anything to her. (Tr. 370).  She stated that she became "sheepish" and "quiet." (Tr. 370).  L.W. testified that she eventually told stepmother that appellant had been raping her.  (Tr. 370-371).  She stated that appellant was sometimes forceful with her by grabbing her head. (Tr. 375).  She testified that she did not tell anyone what appellant was doing to her because she made a promise to appellant not to tell anyone.  (Tr. 376-377).  L.W. stated that she was close to appellant.  (Tr. 376).  She stated she had discussed what was happening with S.W.  (Tr. 377-378).  L.W. also testified that appellant showed her a pornographic video involving her mother.  (Tr. 377).

{¶33}  Scott Steele is a forensic interviewer at Harmony House Children's Advocacy Center.  He interviewed both children.  Videos of the interviews were played for the jury.  (Tr. 411, 417; State's Exs. 4, 5).  In the interviews, the children stated that appellant orally and vaginally raped them repeatedly over the course of several years.

{¶34}  Appellant testified in his defense.  He denied all of the allegations against him. (Tr. 537).  He specifically denied having any type of sexual contact with either S.W. or L.W.  (Tr. 537-538).

{¶35}  The jury's verdict was not against the manifest weight of the evidence. While there was no physical evidence establishing appellant raped the children, both children testified unequivocally that appellant orally and vaginally raped them repeatedly over the course of several years.

**{¶36}** Both children and appellant testified in this case. Whether to believe appellant or to believe the children was a matter of credibility for the jury to determine. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give deference to the fact finder's determination of witnesses' credibility. *State v. Jackson*, 7th Dist. Jefferson No. 09-JE-13, 2009-Ohio-6407, at ¶ 18. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). In this case, the jury clearly found the children's testimony to be more credible than appellant's testimony.

**{¶37}** Moreover, the "evidence" appellant points to in support of his position was not admitted by the trial court. Appellant sought to introduce evidence of L.W.'s social media posts and evidence that she may have had sexual relations with a stepbrother and another person. But this evidence was not presented to the jury and, therefore, cannot be considered in a manifest weight of the evidence challenge. (Tr. 290-292, 283-284, 386).

**{¶38}** Thus, we cannot conclude that the jury clearly lost its way in finding appellant guilty of rape.

**{¶39}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶40}** Appellant's third assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING LESLIE DOERFLER TO TESTIFY, WHERE THE STATEMENTS TO WHICH SHE TESTIFIED DID NOT CONSTITUTE STATEMENTS FOR PURPOSE OF MEDICAL DIAGNOSIS OR TREATMENT UNDER EVID.R. 803(4).

**{¶41}** Appellant contends that the trial court should not have allowed Doerfler to testify as to statements made by S.W. and L.W. because her testimony did not comply with Evid.R. 803(4) as statements for the purpose of medical diagnosis or treatment. He

asserts the statements by the children to Doerfler were for the purpose of a criminal investigation. He points to Doerfler's testimony that she conducted a forensic examination, she was acting as a forensic examiner, and her report stated that it was "not part of a medical record." Additionally, he notes that she got her referral from Harmony House.

**{¶42}** A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (8th Dist.1996). Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶43}** Appellant contends here that Doerfler's testimony regarding what S.W. and L.W. told her was hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible at trial. Evid.R. 802.

**{¶44}** Certain statements are not excluded by the hearsay rule, however, even when the declarant is available as a witness. Evid.R. 803. These include, "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4).

**{¶45}** In this case, Doerfler testified that in taking S.W.'s medical history, S.W. reported to her that appellant put his penis in her private part more than once and also put his penis in her mouth. (Tr. 208). Doerfler testified that in taking L.W.'s medical history, L.W. reported appellant had penetrated her vagina with his penis, his finger, and an unidentified object. (Tr. 226).

**{¶46}** Doerfler testified that she is a sexual assault nurse examiner. (Tr. 177-178). This involves being a registered nurse specially trained in evidence collection and sexual growth and development. (Tr. 179-180). She oversees all of the care provided to sexual assault patients at Southeastern Ohio Regional Medical Center. (Tr. 177-178). Doerfler testified that in this case she was working as a forensic examiner and also

working under the direction of a medical doctor. (Tr. 187-188). She consulted with the emergency room doctor on this case and it was her intent to provide medical care and treatment to both S.W. and L.W. (Tr. 188-189). She stated that she also provides evidence to law enforcement in cases such as this. (Tr. 191).

{¶47} The trial court did not abuse its discretion in allowing Doerfler to testify as to the statements S.W. and L.W. made to her in the course of gathering their medical history. Doerfler is a sexual assault nurse examiner whose job it was to examine the children and provide them with medical care and treatment. The children made these statements to Doerfler in the course of their examination for the purpose of describing their medical history.

{¶48} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶49} Appellant's fourth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING SCOTT STEELE TO TESTIFY, WHERE THE STATEMENTS TO WHICH HE TESTIFIED DID NOT CONSTITUTE STATEMENTS FOR THE PURPOSE OF MEDICAL DIAGNOSIS OR TREATMENT UNDER EVID.R. 803(4).

{¶50} Similarly to his third assignment of error, appellant contends that the trial court should not have allowed Steele to testify as to statements by S.W. and L.W. because his testimony did not comply with Evid.R. 803(4) as being for the purpose of medical diagnosis or treatment. He argues that Steele did not present any evidence of medical credentials, training, or experience. Nor did he present any evidence that he interviewed the children as part of a medical diagnosis or treatment.

{¶51} As was the case with the previous assignment of error, we review the trial court's decision to admit or exclude evidence for abuse of discretion. *Mays*, 108 Ohio App.3d at 617.

{¶52} Steele is a forensic interviewer at Harmony House Children's Advocacy Center. At Harmony House the goal is to reduce the amount of trauma a child might go through if they are talking about something difficult. (Tr. 396). Steele interviews children

and the interviews are observed by law enforcement and children's services so that the children do not have to endure multiple interviews. (Tr. 396). Steele also makes referrals for medical treatment and counseling. (Tr. 396-397).

**{¶53}** Contrary to appellant's assertion, Steele did not testify as to any statements S.W. or L.W. made to him. He simply provided information regarding what he does and how the interview process works. Then videos of each of the girls' interviews were played for the jury. Steele never testified as to what S.W. or L.W. reported to him. And both girls had testified at trial. Thus, the trial court did not abuse its discretion in allowing Steele's testimony.

**{¶54}** Accordingly, appellant's fourth assignment of error is without merit and is overruled.

**{¶55}** Appellant's fifth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING EVIDENCE OF L.W.'S SOCIAL MEDIA POSTS.

**{¶56}** Appellant argues the trial court should have allowed him to present evidence of L.W.'s social media posts. Counsel sought to introduce Defense Exhibit A, which was a copy of numerous social media messages by L.W. referencing sexual acts, sexual terminology, and sexual activity between her and her stepbrother. The trial court granted the state's objection to the evidence citing Ohio's rape shield law and its prior order excluding any evidence of sexual contact between L.W. and her stepbrother. (Tr. 247).

**{¶57}** Appellant points out that earlier in the trial Doerfler and Steele testified that L.W. did not have the terminology to refer to sexual areas of the body, which implied that she was naïve when it came to such matters. He argues that he wished to use L.W.'s social media posts to impeach her credibility. Appellant contends that L.W.'s knowledge of sexual matters, as it related to her credibility, was a material fact that justified admitting the social media posts. Because this case hinged on L.W.'s (and S.W.'s) credibility, appellant asserts the court abused its discretion in not allowing the social media posts.

**{¶58}** Once again, we review the trial court's ruling on the admission or exclusion of evidence for abuse of discretion. *Mays*, 108 Ohio App.3d at 617.

Case No. 21 BE 0038

**{¶59}** Ohio's rape shield law, provides in part:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D).

**{¶60}** The evidence appellant sought to introduce of L.W.'s social media posts did not involve "evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender." Thus, the trial court did not abuse its discretion in excluding it based on the rape shield act.

**{¶61}** Moreover, L.W. testified at trial. Therefore, as the state argued, appellant had the opportunity to cross examine her on her knowledge of sexual terminology and expose any potential issues with her credibility on this subject. Yet appellant chose not to cross examine her on this matter.

**{¶62}** Accordingly, appellant's fifth assignment of error is without merit and is overruled.

**{¶63}** Appellant's sixth assignment of error states:

THE TRIAL COURT'S DECISION TO STATION TWO DEPUTIES SURROUNDING APPELLANT, IN VIEW OF JURORS, DURING THE FIRST DAY OF TRIAL PREJUDICED APPELLANT, IN VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

**{¶64}** At the conclusion of the first day of trial, defense counsel brought up an issue with the trial court. Counsel stated that there were two deputies seated within three

to four feet of appellant. (Tr. 293). Counsel worried that it sent an impression to the jury that appellant was a "dangerous human being" and they needed to be protected from him. (Tr. 293). Counsel also felt that his conversations with appellant were not kept private because the deputies were too close. (Tr. 293). He proposed having the deputies moved to different areas of the courtroom. (Tr. 294). The prosecutor had no objection to defense counsel's proposal. (Tr. 295). The court then granted defense counsel's request. (Tr. 295).

**{¶65}** Appellant now argues that he was prejudiced because the jury viewed the deputies in close proximity to him for the first day of trial.

**{¶66}** In addressing whether security officers at a trial is inherently prejudicial, the United States Supreme Court stated:

> The chief feature that distinguishes the use of identifiable security officers from courtroom practices we might find inherently prejudicial is the wider range of inferences that a juror might reasonably draw from the officers' presence. While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm. See *Hardee v. Kuhlman*, 581 F.2d 330, 332 (CA2 1978).
>
> To be sure, it is possible that the sight of a security force within the courtroom might under certain conditions "create the impression in the

minds of the jury that the defendant is dangerous or untrustworthy." *Kennedy v. Cardwell*, 487 F.2d 101, 108 (CA6 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). However, "reason, principle, and common human experience," *Williams*, supra, 425 U.S., at 504, 96 S.Ct., at 1693, counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial. In view of the variety of ways in which such guards can be deployed, we believe that a case-by-case approach is more appropriate.

*Holbrook v. Flynn*, 475 U.S. 560, 569, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986).

**{¶67}** In this case, appellant was not prejudiced by the two deputies sitting near him during the first day of the three-day trial. Courts in several similar cases have determined the appellants were not denied fair trials by the close presence of deputies during trial.

**{¶68}** In *State v. Hill*, 7th Dist. Columbiana No. 90-C-56, 1992 WL 356182 (Nov 25, 1992), this court held that in the absence of an affirmative demonstration of prejudice, we would not reverse the appellant's conviction based on his allegation that the jury was prejudiced by the presence of three sheriff's deputies sitting immediately behind his table throughout the trial. In an Eighth District case, the appellate court found that the use of uniformed deputies to escort the appellant to the witness stand was not so inherently prejudicial that the appellant was denied his right to a fair trial. *State v. Mitchell*, 8th Dist. Cuyahoga No. 56575, 1995 WL 527599 (Sept. 7, 1995). And the Ninth District has determined that having two deputies in the courtroom, one stationed near the appellant, was unlikely to be construed by the jury as a sign of anything other than a normal concern for courtroom safety. *State v. Gall*, 9th Dist. Lorain No. 18CA011445, 2019-Ohio-4907.

**{¶69}** In this case, two uniformed deputies were seated near appellant during the first day of trial. For the second and third days of trial, on appellant's request, the deputies moved to different areas of the courtroom. Appellant has not pointed to any evidence that he was prejudiced by the deputies' presence near him on the first day of trial. Based on the case law, we will not assume appellant was prejudiced in this case.

**{¶70}** Accordingly, appellant's sixth assignment of error is without merit and is overruled.

**{¶71}** Appellant's seventh assignment of error states:

THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES UNDER R.C. 2929.14(C)(4) WAS CONTRARY TO LAW.

**{¶72}** Appellant claims the court should not have imposed consecutive sentences. It asserts that while the trial court made the statutorily-mandated consecutive sentencing findings at the sentencing hearing, the court failed to include those findings in the sentencing judgment entry.

**{¶73}** When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. This court discussed the Ohio Supreme Court's most recent comments on felony sentencing review and *Marcum*:

> The Ohio Supreme Court recently addressed review of felony sentences in *State v. Jones*, —— Ohio St.3d ——, 2020-Ohio-6729, —— N.E.3d ——. The *Jones* Court clarified the standard of review for felony sentences that was previously announced in *Marcum*. *Marcum* held "that R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under 'division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code.' " *Marcum*, supra, ¶ 22. The *Jones* Court did not overrule *Marcum* but clarified dicta to reflect that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones*, supra, at ¶ 42.

*State v. McGarry*, 7th Dist. Belmont No. 19 BE 0049, 2021-Ohio-1281, ¶ 18.

{¶74}   In this case, the trial court sentenced appellant to 25 years to life on each of the four R.C. 2907.02(A)(1)(b) counts of rape to be served consecutive to each other. On the single R.C. 2907.02(A)(2) count of rape, the court sentenced him to 11 to 16½ years to be served concurrent with his other sentences.

{¶75}   As to the issue of consecutive sentences, R.C. 2929.14(C)(4) requires a trial court to make specific findings:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶76}   It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 7th Dist. Mahoning No. 12-MA-97, 2013-Ohio-2956, ¶ 17. The court need not give its reasons for making those findings however. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 38. A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 7th Dist. Mahoning No. 13-MA-125, 2015-Ohio-4100, ¶ 33-34, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶77} As appellant concedes, the trial court made each of the required consecutive sentencing findings at the sentencing hearing. The court found that consecutive service was necessary to protect the public from future crime and to punish appellant. (Sentencing Tr. 11). It found that consecutive sentences are not disproportionate to the seriousness of appellant's conduct and to the danger he poses to the public. (Sentencing Tr. 11). And the court found that appellant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime from appellant. (Sentencing Tr. 11). Additionally, it found that at least two of the multiple offenses were committed as a part of one or more courses of conduct and the harm caused to L.W. and S.W. was great or unusual. (Sentencing Tr. 12).

{¶78} Appellant notes that the court found at the sentencing hearing that his history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime from him. (Sentencing Tr. 11). But he asserts the court did not make this finding in its judgment entry. Appellant is mistaken.

{¶79} In the sentencing judgment entry, the court found that consecutive sentences (1) were necessary to protect the public from future crime and to punish appellant and (2) were not disproportionate to the seriousness of appellant's conduct and the danger he posed to the public. It then found that: "[T]he imposition of consecutive sentences is reasonable and appropriate because the offender has an established pattern of criminal and drug related activity, evidenced by his prior convictions. Therefore, the Court finds that Defendant poses a great risk of committing future crimes and finds that

consecutive sentences are necessary to protect the public from future crime." Thus, the trial court did incorporate this necessary finding into the sentencing judgment entry.

**{¶80}** Accordingly, appellant's seventh assignment of error is without merit and is overruled.

**{¶81}** Appellant's eighth assignment of error states:

THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDINGS UNDER R.C. 2929.14(C)(4).

**{¶82}** Here appellant claims the trial court's consecutive sentencing findings were not supported by the record. He points out that he had a minimal criminal record before this case with no felony convictions and no sex offense convictions. Additionally, he points out that his offenses carry high mandatory minimum sentences of 25 years to life. Given the fact that he was 53 years old at the time of sentencing, appellant argues that even if the court ran his sentences concurrently he would not be eligible for parole until he was 78.

**{¶83}** As set out above, we must uphold appellant's sentences unless the evidence clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4). R.C. 2953.08(G)(2)(a); *Jones*, 2020-Ohio-6729, at ¶ 28; *Marcum*, 2016-Ohio-1002, at ¶ 1.

**{¶84}** Appellant's presentence investigation (PSI) report, gives much support for appellant's sentence. Pursuant R.C. 2952.03(D)(1), a PSI is not a public record and remains confidential; however, it may be used by trial and appellate courts for purposes of sentencing and appellate review of that sentence. *State v. Little*, 7th Dist. Mahoning No. 10 MA 145, 2011-Ohio-4256, ¶ 27, fn. 1.

**{¶85}** Given the PSI, in addition to the fact that appellant was convicted of repeatedly raping two children who looked to him as the stepfather, we cannot conclude that the evidence clearly and convincingly does not support the court's findings. Additionally, there is no indication that appellant's sentence is otherwise contrary to law.

**{¶86}** Accordingly, appellant's eighth assignment of error is without merit and is overruled.

**{¶87}** Appellant's ninth assignment of error states:

APPELLANT'S INDICTMENT WAS VOID WITH RESPECT TO COUNT FIVE OF THE INDICTMENT BECAUSE THE INDICTMENT WAS INSUFFICIENT TO CHARGE APPELLANT WITH THE OFFENSE, IN VIOLATION OF APPELLANT'S PROTECTIONS AGAINST DOUBLE JEOPARDY AND RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

**{¶88}** In his final assignment of error, appellant asserts that his indictment did not properly charge him on the fifth count of rape. He claims that Count Five only lists, "Rape, O.R.C. § 2907.02(A)(2)(B), F1." He asserts Count Five does not set forth the name or identity of the alleged victim, the specific acts, or the date or date range on which the offense allegedly occurred. Appellant claims he was prejudiced by these defects. Without a specific date and victim, appellant argues, he could not adequately prepare a defense to this charge.

**{¶89}** The Ohio Supreme Court has explained the purpose of an indictment:

An individual accused of a felony is entitled to an indictment setting forth the "nature and cause of the accusation" pursuant to Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution. The purpose of an indictment is twofold. By compelling the government to aver all material facts constituting the essential elements of an offense, an accused is afforded with adequate notice and an opportunity to defend. See *Redmond v. State* (1878), 35 Ohio St. 81, 82–83; *Holt v. State* (1923), 107 Ohio St. 307, 140 N.E. 349. An indictment, by identifying and defining the offense, also enables an accused to protect himself from any future prosecutions for the same offense. See *Harris v. State* (1932), 125 Ohio St. 257, 181 N.E. 104.

*State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985).

**{¶90}** Pursuant to R.C. 2941.03 an indictment is sufficient if it can be understood:

(A) That it is entitled in a court having authority to receive it, though the name of the court is not stated;

(B) If it is an indictment, that it was found by a grand jury of the county in which the court was held * * *;

(C) That the defendant is named, or, if his name cannot be discovered, that he is described by a fictitious name, with a statement that his true name is unknown to the jury or prosecuting attorney, but no name shall be stated in addition to one necessary to identify the accused;

(D) That an offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, is triable therein;

(E) That the offense was committed at some time prior to the time of finding of the indictment or filing of the information.

**{¶91}**   Appellant is mistaken here as to the contents of the indictment.  As to Count Five, the indictment states:

The JURORS OF THE GRAND JURY of the State of Oho, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that on or about the 1st day of January, 2017 through the 16th day of May, 2020 at Belmont County, Ohio,

* * *

COUNT V:  On or about January 2, 2020 through May 16, 2020, the defendant did engage in sexual conduct with L.W. when Greg Carter purposely compelled her to submit by force or threat of force.  All in violation of Ohio Revised Code Section §2907.02(A)(2)(B) F-1.

Case No. 21 BE 0038

**{¶92}** Thus, in addition to meeting the R.C. 2941.03 requirements, Count Five also notified appellant of the alleged victim, the date range for the alleged offense, and the nature of the offense.

**{¶93}** Accordingly, appellant's ninth assignment of error is without merit and is overruled.

**{¶94}** For the reasons stated above, the trial court's judgment is hereby affirmed.


Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**