[Cite as *State v. Simmons*, 2023-Ohio-4246.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MICHAEL L. SIMMONS AKA MEKIYEL MEKKA SINCERE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 22 JE 0022

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 21-CR-94

**BEFORE:**
David A. D'Apolito, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed, Vacated and Remanded.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor, and *Atty. George M. Sarap,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

Michael L. Simmons aka Mekiyel Mekka Sincere*,* Defendant-Appellant.

Dated: November 22, 2023

**D'APOLITO, P.J.**

{¶1} Appellant, Michael L. Simmons, appeals from the October 13, 2022 judgment of the Jefferson County Court of Common Pleas convicting him for felonious assault with specifications and having weapons while under disability following a trial by jury, and consecutively sentencing him to a total of 12 years (minimum) to 15 years (maximum) in prison.[1]  On appeal, Appellant raises arguments involving the right to an impartial jury, sufficiency of the evidence, manifest weight, prosecutorial misconduct, consecutive sentences, Reagan Tokes, juror bias, and judicial bias.  For the reasons stated, we affirm Appellant's convictions but vacate his sentence and remand this matter to the trial court for resentencing consistent with R.C. 2929.14(C)(4) (consecutive sentences) and 2929.19(B)(2)(c) (Reagan Tokes).

## **FACTS AND PROCEDURAL HISTORY**

{¶2} On June 2, 2021, Appellant was indicted by the Jefferson County Grand Jury on two counts: count one, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(2), with specifications for possession of a firearm and brandishing a firearm; and count two, having weapons while under disability, a felony of the third degree in violation of R.C. 2923.13(A)(3).[2]  Appellant retained counsel, pled not guilty at his arraignment, and waived his right to a speedy trial.

{¶3} A trial by jury commenced on October 6, 2022.[3]

{¶4} Appellee, the State of Ohio, presented eight witnesses: (1) Brandon Kelly, a patrolman with Steubenville Police Department ("SPD"); (2) Joel Michael Recznik, an officer with SPD; (3) Joe Buchmelter, a captain with SPD; (4) Shawn Extrovich, a patrolman with SPD; (5) Mark Taylor, a sergeant with SPD; (6) Dominique Richardson,

---

[1] Am. Sub. S.B. No. 201, 2018 Ohio Laws 157, known as the "Reagan Tokes Law," significantly altered the sentencing structure for many of Ohio's most serious felonies by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after March 22, 2019.

[2] The charges stem from an altercation between Appellant and Dominique Richardson.

[3] The parties stipulated Appellant was under a disability as defined by R.C. 2923.13 at the time of the offense.  (9/30/2022 Stipulation).

the victim; (7) Julie Altizer, a forensic scientist with Ohio Bureau of Criminal Investigation ("BCI"); and (8) Brian Bissett, a detective with SPD.

{¶5} On July 14, 2020, Patrolman Kelly was working routine patrol. (10/6/2022 Trial by Jury Tr., p. 52). He was flagged down by a female who identified herself as Jasmine Savage. (*Id.*) Savage revealed there was a fight at the Bridgeview Apartments between her boyfriend (Richardson) and another male (Appellant) and gunshots were fired. (*Id.* at p. 52, 55). Patrolman Kelly radioed for backup assistance. (*Id.* at p. 52). Patrolman Extrovich arrived and assisted Patrolman Kelly. (*Id.* at p. 75). At the scene, it was clearly evident that some sort of disturbance occurred, including a broken fence into a vehicle, multiple items in the roadway, and blood droplets leading up the stairwell to the apartments. (*Id.* at p. 52-53).

{¶6} Sergeant Taylor arrived and he and Patrolman Kelly took photographs of the scene. (*Id.* at p. 54); (Exhibits 1-17). Sergeant Taylor picked up evidence, including a pair of broken sunglasses, keys, and a head cloth. (10/6/2022 Trial by Jury Tr., p. 77). He spoke with Richardson. (*Id.*) The perpetrator was identified as Appellant. (*Id.* at p. 79).

{¶7} Officer Recznik testified that Richardson arrived at the police station after the incident with a backpack. (*Id.* at p. 60). Inside the backpack were the handgun involved in the incident and a hat. (*Id.*) Captain Buchmelter retrieved the gun and Officer Recznik took photographs of it as well as the hat and shell casings. (*Id.*); (Exhibits 18-37). Officer Recznik also took pictures of Richardson who had a split lip. (10/6/2022 Trial by Jury Tr., p. 62); (Exhibits 38-39). The gun and shell casings were admitted into evidence. (Exhibits 50, 52).

{¶8} Captain Buchmelter briefly interviewed Richardson in the detectives' office following the incident; the interview was recorded. (10/6/2022 Trial by Jury Tr., p. 70, 72). Richardson did not know Appellant before this incident. (*Id.* at p. 95). Richardson testified Appellant's real name is Michael Simmons and his Facebook name is KT. (*Id.* at p. 96-97). Richardson explained how the altercation occurred: Richardson got out of his car; saw another car pull up; a man got out of the vehicle, who he believed to be Appellant; the man walked over to Richardson; and attacked him with a gun. (*Id.* at p. 97-98). Richardson said the gun was not his and believed it went off during the altercation but he

was not hit by any gunfire. (*Id.* at 98). Richardson retrieved the gun and cartridge and later gave them to the police. (*Id.* at p. 98-99).

{¶9} Detective Bissett viewed surveillance video footage of the security cameras from the apartment building. (*Id.* at p. 130); (Exhibits 47-49). The men identified in the altercation were Richardson and Appellant. (*Id.* at p. 137); (*Id.*). Appellant started the fight. (Exhibits 47-49). The video clearly shows Appellant drawing a handgun from his pants during the assault. (*Id.*); *see also* (10/11/2022 Sentencing Hearing Tr., p. 233); (10/13/2022 Sentencing Entry, p. 2-3). The gun discharged during the struggle but fortunately, Richardson was able to disarm Appellant. (Exhibits 47-49). Detective Bissett also viewed the firearm and testified it was operable. (10/6/2022 Trial by Jury Tr., p. 131). The results of the test-fire were submitted into evidence. (*Id.* at p. 132); (Exhibits 53-54). The serial number on that gun matches the serial number of the gun that was retrieved in this crime. (10/6/2022 Trial by Jury Tr., p. 133). After obtaining a search warrant, Detective Bissett got a swab from Appellant and sent it to BCI. (*Id.*)

{¶10} BCI forensic scientist Altizer testified there were three items submitted in this case: (1) a firearm with the magazine; (2) a hat; and (3) a DNA standard from Appellant. (*Id.* at p. 114-115). Altizer tests and wrote a report. (*Id.* at p. 115); (Exhibit 44). Regarding the firearm, Sample 1.1, a swab of the trigger and trigger guard, and 1.2, the swab of the grip, Appellant was not the major contributor. (10/6/2022 Trial by Jury Tr., p. 118). Sample 1.3, a swab of the back slide area, and 1.4, the swab of the safety magazine release and slide release, were not run for DNA analysis. (*Id.*) Sample 1.5, a swab of the front slight area, Appellant was the major contributor (one in over a trillion people). (*Id.* at p. 118-119). Sample 1.6, a swab of a casing, was not run for DNA analysis. (*Id.* at p. 119). Regarding the hat, Sample 2.1, a DNA profile was not interpretable. (*Id.*) Regarding Appellant's DNA standard, Sample 3.1, the swab of the front slight area of the firearm revealed Appellant as the major contributor (one in over a trillion people). (*Id.*)

{¶11} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶12} The defense presented one witness: Valicia Martin, Appellant's girlfriend at the time of this incident. Martin worked at a car lot with Richardson. (*Id.* at p. 171). A

dispute had been building up for a few days. (*Id.* at p. 177). Martin said she was with Appellant when this incident occurred. (*Id.* at p. 172). According to Martin, Appellant got out of his vehicle; Richardson was outside; she remained in the passenger seat; and Savage came over and began fighting with her. (*Id.* at p. 174-179). Martin did not see Richardson or Appellant for a significant period of time and remembers Appellant running back to the vehicle. (*Id.* at p. 179). On cross-examination, Martin said she did not see the initial confrontation between Richardson and Appellant. (*Id.* at p. 182). Martin stated Richardson had a gun and she never knew Appellant to carry a gun. (*Id.* at p. 183-184).

{¶13} The jury found Appellant guilty on both counts, including the two specifications, as charged in the indictment.

{¶14} On October 13, 2022, following a sentencing hearing, the trial court sentenced Appellant to six years (minimum) to nine years (maximum) on count one, merged the firearm specifications to three years mandatory, and three years on count two. The counts were ordered to be served consecutively for a total of 12 years (minimum) to 15 years (maximum) in prison, the first three years of which are mandatory. The court further notified Appellant that he is subject to post-release control for a period of 18 months up to three years.[4]

{¶15} Appellant filed a timely appeal and, through his appointed counsel, raises six assignments of error.[5]

---

[4] Appellant filed a pro se motion for new trial on October 17, 2022. The State filed an opposition ten days later. On October 27, 2022, the trial court noted Appellant has appointed counsel for his appeal and overruled his pro se motion for new trial.

[5] On March 3, 2023, Appellant filed a pro se motion to remove his appellate counsel and appoint new appellate counsel. On April 12, 2023, this court relieved from service the trial court's appointed attorney as Appellant's counsel of record on appeal and appointed a new appellate counsel for Appellant. On April 14, 2023, new counsel filed a notice of appearance and filed a brief on behalf of Appellant on May 4, 2023, raising six assignments of error. On June 2, 2023, the State filed a brief. On June 7, 2023, Appellant filed a pro se motion to remove appellate counsel, to strike his brief, and to appoint new counsel again, or allow him to proceed pro se. On June 12, 2023, appellate counsel filed a motion to withdraw, to strike Appellant's brief, and to allow Appellant to proceed pro se. On June 29, 2023, this court denied Appellant's request for the appointment of new counsel, granted counsel's request to withdraw, denied both requests to strike the brief filed by counsel, and allowed Appellant to file a supplemental brief. (6/29/2023 Magistrate's Order, p. 2). On August 21, 2023, Appellant filed a pro se supplemental brief raising five assignments of error, in addition to the six assignments of error included in the May 4, 2023 brief filed by his appellate counsel which was not stricken by this court. (*Id.*) Thus, we now have a total of 11 assignments of error to consider in this appeal. On August 29, 2023, the State filed a brief in response to Appellant's pro se supplemental brief.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED BY ALLOWING A LAY WITNESS TO TESTIFY ON AN ULTIMATE FACT RESERVED FOR THE JURY.

**ASSIGNMENT OF ERROR NO. 2**

SIMMONS' CONVICTIONS ARE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

**ASSIGNMENT OF ERROR NO. 3**

SIMMONS' CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR NO. 4**

THE STATE IMPROPERLY MISCHARACTERIZED THE EVIDENCE DURING ITS CLOSING ARGUMENT.

**ASSIGNMENT OF ERROR NO. 5**

THE TRIAL COURT FAILED TO MAKE THE FINDINGS REQUIRED TO IMPOSE CONSECUTIVE SENTENCES AT THE SENTENCING HEARING.

**ASSIGNMENT OF ERROR NO. 6**

THE TRIAL COURT FAILED TO PROPERLY PROVIDE SIMMONS WITH THE REGAN [SIC] TOKES ADVISEMENTS AS REQUIRED BY R.C. 2929.19.

{¶16} Appellant, pro se, raises five supplemental assignments of error.

**PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED WHEN REFUSING TO GRANT DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL WITH RESPECT TO THE CHARGE OF FELONIOUS ASSUALT – INSUFFICIENCY OF EVIDENCE.**

**PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 2**

**THE EVIDENCE FAILS TO SHOW THAT DEFENDANT CAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM TO ALLEGED VICTIM BY A FIREARM – MANIFEST WEIGHT OF EVIDENCE.**

**PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED WHEN NOT GRANTING DEFENDANT'S CHALLENGE FOR CAUSE DIRECTED TOWARDS VENIRPERSON [SIC] RICHARD LEASURE – JUROR BIAS.**

**PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 4**

**THE PROSECUTOR COMMITTED MISCONDUCT BY MAKING IMPROPER REMARKS AND MISSTATING EVIDENCE BY GIVING CONFUSING LEGAL CONCEPTS – PROSECUTORIAL MISCONDUCT.**

**PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 5**

**THE TRIAL COURT'S REMARKS AND TREATMENT OF DEFENDANT DENIED HIM DUE PROCESS – JUDICIAL BIAS.**

{¶17} For ease of discussion, some of Appellant's assignments of error and pro se supplemental assignments of error will be addressed out of order and those that are interrelated will be considered together.

{¶18} In his first assignment of error, Appellant argues the trial court erred in allowing a lay witness to testify on an ultimate fact reserved for the jury. Specifically,

Appellant claims the court abused its discretion in allowing Detective Bissett to interpret a portion of the surveillance video to suggest that Appellant pulled a firearm from his waistband.

> A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (8th Dist.1996). Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

*State v. Carter*, 7th Dist. Belmont No. 21 BE 0038, 2022-Ohio-3787, ¶ 42.

{¶19} Testimony offered by an officer is often considered lay testimony. *State v. Donlow*, 7th Dist. Mahoning No. 20 MA 0049, 2021-Ohio-3019, ¶ 70. The use of a video, and testimony about the video, is common practice in criminal cases. *See, e.g., State v. Hopkins*, 7th Dist. Mahoning No. 20 MA 0054, 2021-Ohio-4632.

{¶20} Evid.R. 701, "Opinion testimony by lay witnesses," states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Evid.R. 701.

{¶21} Evid.R. 704, "Opinion on ultimate issue," states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

{¶22} In this case, during his testimony, Detective Bissett was reviewing and explaining the surveillance video. (10/6/2022 Trial by Jury Tr., p. 136-141); (Exhibits 47-49). Defense counsel objected, which the trial court overruled. (10/6/2022 Trial by Jury

Tr., p. 138-139). Permitted to give an opinion, Detective Bissett stated, "Watch his [Appellant's] left hand as it reaches towards the waistband. There, yeah." (*Id.* at p. 139).

{¶23} Detective Bissett merely provided an explanation of the point in the video that the gun appeared. The jury viewed the video during trial and again during deliberations. (Exhibits 47-49). Detective Bissett's testimony was well within the purview of Evid.R. 701 and 704. We fail to find that Appellant was prejudiced or denied his right to an impartial jury.

{¶24} Appellant's first assignment of error is without merit.

{¶25} In his second and third assignments of error and in his first and second pro se supplemental assignments of error, Appellant contends his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

> "When a court reviews a record for sufficiency, '(t)he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.* * *

> The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d

230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 46-48.

{¶26} "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997), quoting *Jenks, supra*, paragraph one of the syllabus.

{¶27} For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and further conclude it is supported by sufficient evidence.

{¶28} Appellant takes issue with the guilty finding on both counts.

{¶29} Count one, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(2), states in part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶30} Count two, having weapons while under disability, a felony of the third degree in violation of R.C. 2923.13, states in part:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.

R.C. 2923.13(A)(3).

{¶31} As stated, on July 14, 2020, Patrolman Kelly was working routine patrol. (10/6/2022 Trial by Jury Tr., p. 52). He was flagged down by Savage. (*Id.*) Savage revealed there was a fight at the Bridgeview Apartments between Richardson and Appellant and gunshots were fired. (*Id.* at p. 52, 55). Patrolman Extrovich arrived and assisted Patrolman Kelly. (*Id.* at p. 75). At the scene, it was clearly evident that some sort of disturbance occurred, including a broken fence into a vehicle, multiple items in the roadway, and blood droplets leading up the stairwell to the apartments. (*Id.* at p. 52-53). Sergeant Taylor arrived and he and Patrolman Kelly took photographs of the scene. (*Id.* at p. 54); (Exhibits 1-17). Sergeant Taylor spoke with Richardson. (10/6/2022 Trial by Jury Tr., p. 77). The perpetrator was identified as Appellant. (*Id.* at p. 79).

{¶32} Officer Recznik testified that Richardson arrived at the police station after the incident with a backpack. (*Id.* at p. 60). Inside the backpack were the handgun involved in the incident and a hat. (*Id.*) Captain Buchmelter retrieved the gun and Officer Recznik took photographs of it as well as the hat and shell casings. (*Id.*); (Exhibits 18-37). Officer Recznik also took pictures of Richardson who had a split lip. (10/6/2022 Trial by Jury Tr., p. 62); (Exhibits 38-39). The gun and shell casings were admitted into evidence. (Exhibits 50, 52).

{¶33} Captain Buchmelter briefly interviewed Richardson in the detectives' office following the incident; the interview was recorded. (10/6/2022 Trial by Jury Tr., p. 70, 72). Richardson did not know Appellant before this incident. (*Id.* at p. 95). Richardson explained how the altercation occurred: Richardson got out of his car; saw another car pull up; a man got out of the vehicle, who he believed to be Appellant; the man walked over to Richardson; and attacked him with a gun. (*Id.* at p. 97-98). Richardson said the gun was not his and he believed it went off during the altercation but he was not hit by any gunfire. (*Id.* at p. 98). Richardson retrieved the gun and cartridge and later gave them to the police. (*Id.* at p. 98-99).

{¶34} Detective Bissett viewed surveillance video footage of the security cameras from the apartment building. (*Id.* at p. 130); (Exhibits 47-49). The men identified in the altercation were Richardson and Appellant. (*Id.* at p. 137); (Exhibits 47-49). Appellant started the fight. (Exhibits 47-49). The video clearly shows Appellant drawing a handgun from his pants during the assault. (*Id.*); *see also* (10/11/2022 Sentencing Hearing Tr., p.

233); (10/13/2022 Sentencing Entry, p. 2-3). The gun discharged during the struggle but fortunately, Richardson was able to disarm Appellant. (Exhibits 47-49). Detective Bissett also viewed the firearm and testified it was operable. (10/6/2022 Trial by Jury Tr., p. 131). The results of the test-fire were submitted into evidence. (*Id.* at p. 132); (Exhibits 53-54). The serial number on that gun matches the serial number of the gun that was retrieved in this crime. (10/6/2022 Trial by Jury Tr., p. 133). After obtaining a search warrant, Detective Bissett got a swab from Appellant and sent it to BCI. (*Id.*)

{¶35} BCI forensic scientist Altizer tests and wrote a report. (*Id.* at p. 115); (Exhibit 44). Sample 1.5, a swab of the front slight area of the firearm, revealed that Appellant was the major contributor (one in over a trillion people). (10/6/2022 Trial by Jury Tr., p. 118-119). Regarding Appellant's DNA standard, Sample 3.1, the swab of the front slight area of the firearm revealed Appellant as the major contributor (one in over a trillion people). (*Id.*)

{¶36} Also, the record reveals Appellant's criminal history involves a prior prison term, with probation revocations, including convictions for: corrupting another with drugs; trafficking in drugs; tampering with evidence; possession of drugs; having weapons while under disability; and carrying a concealed weapon. (10/11/2022 Sentencing Hearing Tr., p. 233-236); (10/13/2022 Sentencing Entry, p. 2).

{¶37} Pursuant to *Jenks, above*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of felonious assault and having weapons while under disability were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

{¶38} Also, the jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of felonious assault and having weapons while under disability. *Thompkins, supra*, at 387.

{¶39} Appellant's second and third assignments of error and his first and second pro se supplemental assignments of error are without merit.

{¶40} In his third pro se supplemental assignment of error, Appellant posits there was juror bias because the trial court did not grant his challenge for cause directed toward venireperson Richard Leasure.

During voir dire, a trial court has broad discretion in determining a juror's ability to be fair and impartial, and the court's decision on a challenge for cause will not be reversed unless the court clearly abused its discretion. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 73; *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 33. An abuse of discretion involves an attitude that is unreasonable, arbitrary, or unconscionable. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 46. A decision is considered unreasonable if there is no sound reasoning process to support it. *Id.* The reviewing court defers to the trial court's decision where a prospective juror was challenged for bias as the trial judge has the opportunity to personally view and hear the prospective juror during voir dire. *Trimble*, 122 Ohio St.3d 297 at ¶ 73, 911 N.E.2d 242.

*State v. Savage*, 7th Dist. Mahoning No. 16 MA 0191, 2018-Ohio-5125, ¶ 37.

{¶41} During voir dire, Leasure indicated he knew the assistant prosecutor "from way back" from "American Legion ball" when they were teenagers. (10/6/2022 Trial by Jury Tr., p. 29-30). Defense counsel requested a challenge for cause and a sidebar was held. (*Id.* at p. 30). Leasure also knew the assistant prosecutor from a case from "lots of years ago." (*Id.* at p. 32). The trial judge asked Leasure, "So is there anything about that that would cause you to favor or disfavor [the assistant prosecutor] Mr. Sarap in this case?" (*Id.* at p. 33). Leasure replied, "No, sir." (*Id.*) Defense counsel renewed the challenge, which was overruled. (*Id.* at p. 34).

{¶42} The assistant prosecutor explains here:

Juror Richard Leasure stated he knew me. I had forgotten about it until he reminded me at trial. I did NOT play ball with him. I checked the jury questionnaires. Richard Leasure was born in 1959. I, George Sarap, was born in 1949. I could not remember the circumstances. After checking records my recollection was refreshed. Actually, the year we are talking about was 1983, forty years ago. I did NOT represent Richard Leasure. I represented Melissa Leasure, his wife, in a personal injury claim against

Richard Leasure's insurance company. No suit was filed, and claim was settled out of court. At that time, they were divorced. I believe they got remarried.

(8/29/2023 Appellee's Brief in Response to Appellant's Pro Se Supplemental Brief, p. 4).

{¶43} The record reflects the trial court and counsel questioned Leasure in depth. (10/6/2022 Trial by Jury Tr., p. 29-34). It was revealed that Leasure could be fair and impartial. (*Id.*); *Savage, supra,* at ¶ 37. We fail to find any juror bias.

{¶44} Appellant's third pro se supplemental assignment of error is without merit.

{¶45} In his fourth assignment of error and in his fourth pro se supplemental assignment of error, Appellant maintains the prosecutor mischaracterized the evidence during closing argument.

A prosecutor is afforded wide latitude during closing argument and it is within the trial court's sound discretion to determine whether a comment is improper. *State v. Williams,* 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 10, citing *State v. Benge*, 75 Ohio St.3d 136, 661 N.E.2d 1019 (1996). When reviewing a comment made by the state, we must first determine whether the remark was proper. *State v. Peeples*, 7th Dist. Mahoning No. 07 MA 212, 2009-Ohio-1198, ¶ 74, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). If the remark appears to be improper, we must then determine whether it prejudicially affected the defendant's substantial rights. *Id.*

* * *

"An attorney may not express a personal belief or opinion as to the credibility of a witness." *State v. Myers,* 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 145, citing *State Williams,* 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). However, "(t)he prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument." *State v. Treesh,* 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001), citing *State v. Smith,* 80 Ohio St.3d 89, 111,

684 N.E.2d 668 (1997). When reviewing a prosecutor's comments, a court must view the state's closing argument in its entirety. *Treesh, supra,* at 466, citing *State v. Moritz,* 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 (1980). Although a prosecutor should avoid voicing a personal opinion as to a defendant's guilt, a comment on guilt is not *per se* improper. *State v. Zehenni,* 12th Dist. Warren No. CA2016-03-020, 2016-Ohio-8233, ¶ 46.

*State v. Hill*, 7th Dist. Belmont No. 19 BE 0050, 2021-Ohio-3327, ¶ 42, quoting *State v. Graffius*, 7th Dist. Columbiana No. 18 CO 0008, 2019-Ohio-2714, ¶ 16, 19.

{¶46} Appellant takes issue with the following two statements made by the prosecutor during closing argument: (1) "So [Richardson] pointed to the Defendant. He said 'The Defendant is the person who did this to me and the Defendant is the one, that's him right there sitting'"; and (2) "[I]f you can just pull the gun and point, attempt or hit him on the head with the gun, he's guilty [of felonious assault]." (10/6/2022 Trial by Jury Tr., p. 189, 191). Appellant points out that Richardson testified he "believed" Appellant was the perpetrator and that the prosecutor's comments constitute reversible error. Appellant opines that just pulling out a firearm and pointing it does not amount to felonious assault.

{¶47} As addressed, Captain Buchmelter briefly interviewed Richardson in the detectives' office following the incident; the interview was recorded. (10/6/2022 Trial by Jury Tr., p. 70, 72). Richardson did not know Appellant before this incident. (*Id.* at p. 95). Richardson explained how the altercation occurred: Richardson got out of his car; saw another car pull up; a man got out of the vehicle, who he believed to be Appellant; the man walked over to Richardson; and attacked him with a gun. (*Id.* at p. 97-98). Richardson said the gun was not his and believed it went off during the altercation. (*Id.* at 98). Richardson retrieved the gun and cartridge and later gave them to the police. (*Id.* at p. 98-99).

{¶48} In addition, as stated, pursuant to *Jenks, above*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of felonious assault were proven.

{¶49} Viewing the State's closing argument in its entirety, we fail to find any error. The prosecutor was afforded wide latitude during closing argument. *Id.* at ¶ 16. Upon

review, the prosecutor's comments were proper. *Id.* Even assuming arguendo that they were improper, no prejudice to Appellant's substantial rights resulted. *Id.*

{¶50} Appellant's fourth assignment of error and his fourth pro se supplemental assignment of error are without merit.

{¶51} In his fifth assignment of error, Appellant stresses the trial court failed to make the findings required to impose consecutive sentences at the sentencing hearing.

{¶52} When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2)(a)-(b).

{¶53} Regarding consecutive sentences, R.C. 2929.14(C)(4) states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 7th Dist. Mahoning No. 12-MA-97, 2013-Ohio-2956, ¶ 17. The court need not give its reasons for making those findings however. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 38. A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 7th Dist. Mahoning No. 13-MA-125, 2015-Ohio-4100, ¶ 33-34, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

*State v. Thomas*, 7th Dist. Mahoning No. 18 MA 0025, 2020-Ohio-633, ¶ 41.

{¶54} At the sentencing hearing, the trial court stressed Appellant was not supposed to have a gun and took in account his prior prison term. (10/11/2022 Sentencing Hearing Tr., p. 249-250). The trial judge told Appellant, "this is not your first rodeo" and "[y]ou had a pile of offenses." (*Id.* at p. 250). The court then went into sentencing Appellant and notifying him of post-release control and his appellate rights. (*Id.* at p. 251-263). The court referred to Appellant as "Mr. Simmons," and Appellant said, "[t]his isn't my name." (*Id.* at p. 262). The court clarified by stating, "the indictment has several names for you" and "there was a name change somewhere along the line." (*Id.*)

{¶55} Problematically, the trial court did not find on the record at the sentencing hearing that "consecutive service is necessary to protect the public from future crime or to punish the offender, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and one of the findings described in (a), (b), or (c). *See* R.C. 2929.14(C)(4). The court never even mentioned R.C. 2929.14(C)(4) at the sentencing hearing.

{¶56} In its sentencing entry, the trial court stated:

3. The Court finds that consecutive sentences are necessary to protect the public from future crime and to punish Defendant and that consecutive sentences are not disproportionate to the seriousness of Defendant's conduct and to the danger the Defendant poses to the public.

4. The Court further finds that Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by this Defendant.

(10/13/2022 Sentencing Entry, p. 3).

{¶57} In the sentencing entry, the trial court does not specifically mention R.C. 2929.14(C)(4) but it makes consecutive sentence findings which track the language of R.C. 2929.14(C)(4)(c).

{¶58} Appellant's sentence is contrary to law insofar as the trial court erred in not making the findings set forth in R.C. 2929.14(C)(4) at the sentencing hearing, which are required for the imposition of consecutive sentences. *See State v. Jones*, 7th Dist. Harrison No. 19 HA 0003, 2020-Ohio-762, ¶ 33 (*Bonnell* mandates fact-finding by the trial court).

{¶59} Therefore, Appellant's sentence is vacated and this matter remanded for resentencing in order for the trial court to make the required R.C. 2929.14(C)(4) statutory findings at the sentencing hearing and in the sentencing entry pursuant to *Bonnell*. *Id.* at ¶ 33.

{¶60} Appellant's fifth assignment of error is with merit.

**{¶61}** In his fifth pro se supplemental assignment of error, Appellant alleges he was denied due process because of judicial bias. Specifically, Appellant claims the trial judge was biased in admonishing him (outside the presence of the jury) for being late back to the courtroom after a lunch break, overruling a challenge for cause, and during sentencing.

> "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34. Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

> However, the proper avenue for redress when a party believes that a judge is biased and must recuse himself or herself from a case is the filing of an affidavit of bias with the Supreme Court of Ohio. R.C. 2701.031.

*State v. Strojny*, 7th Dist. Mahoning No. 21 MA 0099, 2023-Ohio-1016, ¶ 23-24.

**{¶62}** We have no jurisdiction to rule on this issue. *Id.* at ¶ 24.

**{¶63}** Appellant's fifth pro se supplemental assignment of error is without merit.

**{¶64}** In his sixth assignment of error, Appellant argues the trial court erred in failing to provide him with the Reagan Tokes advisements at the sentencing hearing as required by R.C. 2929.19(B)(2)(c), which states:

> (2) Subject to division (B)(3) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

> * * *

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

Case No. 22 JE 0022

R.C. 2929.19(B)(2)(c)(i)-(v).

{¶65} In the case at bar, it is clear that a prison term was mandatory and that Appellant would serve an indefinite, non-life term. "Therefore, R.C. 2929.19(B)(2)(c) applies and the notifications listed in the statute were required to be given to Appellant at the sentencing hearing." *State v. Evans*, 7th Dist. Columbiana No. 22 CO 0031, 2023-Ohio-2373, ¶ 12. "'(A) trial court's failure to do so requires reversal of the sentence and a remand to the trial court for the sole purpose of conducting a new sentencing hearing consistent with R.C. 2929.19(B)(2)(c).'" *Id.*, quoting *State v. Gatewood*, 2d Dist. Clark No. 2021-CA-20, 2022-Ohio-2513, ¶ 13; *State v. Greene*, 1st Dist. Hamilton No. C-220160, 2022-Ohio-4536, ¶ 9.

{¶66} At sentencing, the trial court informed Appellant of the minimum and maximum terms of incarceration. (10/11/2022 Sentencing Hearing Tr., p. 251-253). However, the court failed to advise Appellant of the requisite notifications pursuant to R.C. 2929.19(B)(2)(c), thereby requiring a remand for resentencing.

{¶67} Appellant's sixth assignment of error is with merit.

## CONCLUSION

{¶68} For the foregoing reasons, Appellant's first through fourth assignments of error and his first through fifth pro se supplemental assignments of error are not well-taken. However, Appellant's fifth and sixth assignments of error are well-taken. The October 13, 2022 judgment of the Jefferson County Court of Common Pleas convicting Appellant for felonious assault with specifications, and having weapons while under disability following a trial by jury is affirmed. However, his sentence is vacated and remanded for resentencing consistent with R.C. 2929.14(C)(4) (consecutive sentences) and 2929.19(B)(2)(c) (Reagan Tokes).

Robb, J., concurs.

Hanni, J., concurs.

Case No. 22 JE 0022

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that Appellant's convictions are affirmed but the sentence is vacated. We hereby remand this matter to the Court of Common Pleas of Jefferson County, Ohio for resentencing according to law and consistent with this Court's opinion. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**